# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Louis A. Smith and John Murphy, as as Trustees of the Walter E. Auch, Sr. Trust dated August 12, 1985,<br><br>      Plaintiffs,<br><br>v.<br><br>Richard E. Lurie,<br><br>      Defendant. | Civil No. 09-3513 (DWF/SER)<br><br><br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Andrew M. Luger, Esq., Bethany D. Krueger, Esq., and Samuel J. Clark, Esq., Greene Espel PLLP, counsel for Plaintiffs.

Gerald T. Laurie, Esq., and Ian S. Laurie, Esq., Laurie & Laurie, PA, counsel for Defendant.

_____

This matter is before the Court on a Motion for Partial Summary Judgment brought by Plaintiff Walter E. Auch, Sr.[1] (Doc. No. 65.) For the reasons set forth below, the Court grants the motion in part and denies it in part.

---

[1] The Motion for Partial Summary Judgment was filed on January 25, 2011. By this Court's Order dated April 5, 2011, Louis A. Smith and John Murphy, as Trustees of the Walter E. Auch, Sr. Trust dated August 12, 1985, have since been substituted as Plaintiffs for Walter E. Auch, Sr., who is deceased. For purposes of this Memorandum Opinion and Order, the Court will refer to Plaintiffs as "Auch."

## BACKGROUND

Auch and Defendant Richard E. Lurie have known each other since the 1980s when they were officers of the Chicago Board Options Exchange. (Doc. No. 68 (Aff. of Andrew M. Luger ("Luger Aff.")), Ex. B (Dep. of Walter E. Auch ("Auch Dep.")) at 22-23.) Lurie also began serving as Auch's tax preparer and advisor around the same time. (*Id.* at 25-26.) Lurie is an owner of and engaged in an accounting practice as a member of Lurie & Associates, LLC. (Answer ¶ 3.)

In January 2006, Auch purchased a 49% partnership interest in E&R Partners from Lurie for $225,000. (Doc. 69 (Aff. of Kelly E. Harris ("Harris Aff.")) ¶ 8; Luger Aff., Ex. A (Dep. of Richard E. Lurie ("Lurie Dep.")) at 40.) The sole asset of E&R Partners is the Westport Office Building in St. Paul ("Westport"), a building in which Lurie has had an ownership interest in partnership or otherwise since the 1970s. (Lurie Dep. at 6-7, 115.) Lurie approached Auch about investing in E&R Partners after the departure of a tenant caused Westport to be unable to meet its expenses. (*Id.* at 13-14, 58-61.) After Auch's investment, Lurie owned a 50% interest in E&R Partners and Lurie's son owned the remaining 1%. (*Id.* at 40.)

Beginning in 2006, Lurie made a series of capital calls, requesting money from Auch for E&R Partners. (*Id.* at 38-39.) In response to each capital call, Auch would write checks to Lurie that would then be deposited into Lurie's personal account. (*Id.* at 75.) At issue in the present motion is Lurie's use of funds that were intended to be used for the benefit of E&R Partners, including Auch's capital contributions.

Auch's first capital contribution was for $122,500 and was deposited into Lurie's personal account on February 24, 2006. (Lurie Dep. at 82-84; Harris Aff. ¶ 10.) The balance in Lurie's account was $608.52 before the deposit. (Lurie Dep. at 85; Harris Aff. ¶ 9.) On the same day, Lurie transferred $35,000 from an account in his wife's name into his personal account and wrote a check to E&R Partners for $34,000. (Harris Aff. ¶ 11.) Between February 24, 2006 and March 31, 2006, an additional $5,335 was deposited into Lurie's account. (*Id.* ¶ 12.) During the same period, $84,700 was disbursed from Lurie's account in transactions unrelated to E&R Partners. (Lurie Dep. at 87-90; Harris Aff. ¶¶ 13-15.) Lurie disbursed $8,700 from his personal checking account to E&R Partners on March 30, 2006. (Harris Aff. ¶ 16.)

Auch's next capital contribution, in the amount of $26,000, was deposited into Lurie's account on March 16, 2007. (Lurie Dep. at 92-93; Harris Aff. ¶ 19.) The balance in Lurie's account before that deposit was $1,020.12. (Harris Aff. ¶ 18.) From March 16, 2007 through March 19, 2007, Lurie wrote checks totaling approximately $17,000 to pay expenses unrelated to E&R Partners. (Lurie Dep. at 96-98; Harris Aff. ¶ 21.) Approximately $5,513 was deposited into Lurie's account from March 21, 2007 through April 20, 2007. (Harris Aff. ¶ 22 & Exs. 16, 23.) During that same period, Lurie disbursed approximately $12,000 in funds from his account in transactions unrelated to E&R Partners. (Lurie Dep. at 98-102; Harris Aff. ¶ 23.) Lurie wrote a check to E&R Partners for $1,500 on March 27, 2007. (Harris Aff. ¶ 24.)

On August 22, 2007, Lurie's personal checking account had a balance of $174.90 when he deposited a check from E&R Partners in the amount of $13,500. (Harris Aff.

¶¶ 27-28.) On that same day, Lurie made payments from his personal account, unrelated to E&R Partners, totaling approximately $13,519. (*Id.* ¶ 29.) Lurie withdrew $500 in cash from his personal checking account and wrote a check for $300 to Lurie & Associates between August 22, 2007 and August 27, 2007. (*Id.* ¶ 31.) On August 27, 2007, Lurie deposited into his personal checking account a check from Auch in the amount of $80,000. (Lurie Dep. at 103; Harris Aff. ¶ 32.) Lurie wrote a check to E&R Partners for $20,000 the same day. (Harris Aff. ¶ 34.) From August 27, 2007 through September 17, 2007, no additional deposits were made into Lurie's account. (*Id.* ¶ 33.) During that same time, Lurie disbursed funds totaling approximately $69,390 in transactions unrelated to E&R Partners. (Lurie Dep. at 105-16; Harris Aff. ¶¶ 35-37.)

Lurie's checking account balance was $304.15 before he deposited Auch's $80,000 capital contribution on December 7, 2007. (Lurie Dep. at 114-116; Harris Aff. ¶¶ 39-40.) Lurie wrote a check to E&R Partners for $33,000 the same day. (Harris Aff. ¶ 42.) Lurie also wrote a check to Lurie & Associates for $8,000 and nineteen additional checks for expenses unrelated to E&R Partners that totaled over $8,800 on December 7, 2007. (Lurie Dep. at 120-25; Harris Aff. ¶¶ 43-44.) The only other deposit into Lurie's account from December 7, 2007 through January 15, 2008 was his $1,556 social security payment on December 19. (Harris Aff. ¶ 41.) During that time, Lurie wrote checks totaling more than $28,800 for expenses unrelated to E&R Partners and withdrew $1,900 in cash from his account. (Lurie Dep. at 125-26; Harris Aff. ¶¶ 45-46.)

Auch's next capital contribution was for $168,000 and was deposited into Lurie's account on January 9, 2009. (Lurie Dep. at 140-41; Harris Aff. ¶ 67.) The balance in

4

Lurie's account was $343.06 before that deposit. (Lurie Dep. at 141; Harris Aff. ¶ 66.) Between January 9, 2009 and June 10, 2009, the only other deposits into Lurie's checking account were his Social Security payments totaling $8,445; $1,450 from two transactions in May 2009; and $10,075 deposited on February 2, 2009, the same day on which Lurie wrote a check to U.S. Bank for $10,075. (Harris Aff. ¶ 68 & n.3.) During this time period, Lurie wrote six checks payable to E&R Partners totaling $15,000. (*Id.* ¶ 69.) He also wrote checks to Lurie & Associates totaling $19,000; to his options trading firm totaling $4,000; to a brokerage account in his wife's name totaling $30,107.60; and for other expenses unrelated to E&R Partners totaling more than $98,700. (Lurie Dep. at 142-58; Harris Aff. ¶¶ 70-73.) Lurie and his wife also withdrew approximately $9,100 in cash from the checking account during this period. (*Id.* ¶ 74.)

Auch's final capital contribution, for $60,000, was deposited into Lurie's account on July 6, 2009. (Lurie Dep. at 159-61; Harris Aff. ¶ 77.) Lurie's checking account balance was $2,752.99 before the deposit. (Harris Aff. ¶ 76.) On July 6, 2009, Lurie wrote checks totaling more than $9,800 for expenses unrelated to E&R Partners. (*Id.* ¶ 79.) Lurie wrote a check for $7,000 to Lurie & Associates on July 7, 2009. (Lurie Dep. at 161-62; Harris Aff. ¶ 80.) Between July 6, 2009 and September 28, 2009, Lurie received deposits totaling approximately $9,637 into his personal checking account. (Harris Aff. ¶ 78.) During that time, in addition to the July 6 and 7 checks, Lurie paid from his account expenses unrelated to E&R Partners totaling approximately $46,245. (Lurie Dep. at 163-72; Harris Aff. ¶ 81.) Lurie and his wife also withdrew approximately

$6,700 in cash during that period. (Harris Aff. ¶ 82.) On September 10, 2009, Lurie wrote a check to E&R Partners for $2,000.

In total from 2006 through 2009, Auch wrote Lurie checks for capital contributions to E&R Partners totaling $536,500 that were deposited into Lurie's account. During the same time period, Lurie caused $384,600 to be deposited into the E&R Partners account. (Doc. No. 75 (Aff. of Richard E. Lurie ("Lurie Aff.")) ¶ 3.) Of that amount, $60,000 were the proceeds of a loan to E&R Partners from Inter Savings Bank and the remainder was from Lurie's personal checking account and the account of Lurie & Associates. (Doc. No. 78 (Aff. of Kelly E. Harris) ¶¶ 3-4.) Lurie also canceled a note receivable from E&R Partners in the amount of $110,964. (Lurie Aff. ¶ 3; Lurie Dep. at 79, 227.)

In addition to the capital contributions, Auch also guaranteed a $460,000 mortgage on Westport and an E&R Partners line of credit for $40,000, both issued by Crown Bank. (Lurie Dep. at 68-69, 211.) On August 11, 2008, with the balance in the E&R Partners checking account at $2,043.25, E&R Partners received an advance on the mortgage that resulted in net proceeds of $212,631 deposited into the E&R Partners account. (Harris Aff. ¶ 49.) From August through November 2008, Lurie wrote checks from the E&R Partners account for transactions unrelated to the partnership that totaled approximately $141,500. (Lurie Dep. at 215-223; Harris Aff. ¶¶ 50-54.) Lurie also wrote checks to Lurie & Associates totaling $42,000 from the E&R Partners account during this same time period. (Lurie Dep. at 216-26; Harris Aff. ¶ 52.)

6

On December 8, 2008, E&R Partners received $30,000 pursuant to the $40,000 line of credit. (Harris Aff. ¶ 59.) At that time, the E&R Partners account had a balance of $1,287.88. (*Id.* ¶ 58.) The next day, Lurie wrote a $26,000 check from the E&R Partners account to Lurie & Associates. (*Id.* ¶ 60.) In December 2008 and January 2009, Lurie wrote checks totaling approximately $6,217 from the E&R Partners account for expenses unrelated to the partnership. (*Id.* ¶ 61.) Crown Bank is now demanding payment on Auch's guaranty. (Luger Aff. Ex. E.)

In or about August 2009, Auch and his estate attorneys met with Lurie regarding Auch's estate. (Compl. ¶ 54.) Auch and Lurie's relationship deteriorated after that meeting. (Compl. ¶¶ 58-61.) Auch initiated this action on December 9, 2009 and asserted claims including fraud, misrepresentation, breach of fiduciary duties, and civil conversion. Auch has now moved for summary judgment on his civil conversion claim.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Conversion

Conversion is an act of willful interference with personal property that deprives another of its use and possession without lawful justification. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn. 1997). The elements of common-law conversion are: (1) the plaintiff has a property interest; and (2) the defendant deprived the plaintiff of that property interest. *Lassen v. First Bank Eden Prairie,* 514 N.W.2d 831, 838 (Minn. Ct. App. 1994).

Auch asserts that he is entitled to summary judgment on his claim that Lurie converted Auch's $536,500 in capital contributions and $213,500 in proceeds from the Crown Bank loans. It is undisputed that Auch's capital contributions and the loan proceeds were to be used for the benefit of the partnership. Auch thus asserts that as soon as Lurie deposited Auch's money into Lurie's personal checking account, Lurie

converted Auch's capital contributions and became liable to Auch. Auch similarly contends that Lurie converted the Crown Bank loan proceeds when Lurie removed those funds from the E&R Partners account and spent the funds for his own personal purposes. In the alternative, Auch asserts that he is entitled to partial summary judgment for conversion of $428,800 of Auch's capital contributions and the $213,500 in loan proceeds. Auch asserts that this lesser total constitutes the amount of Auch's contributions that Lurie spent for personal purposes.

Lurie responds that he made payments into E&R Partners on behalf of Auch that totaled $495,564. These include a note receivable from E&R Partners in the amount of $110,964 that Lurie canceled. Lurie asserts that although these payments were not contemporaneous with Auch's checks to Lurie, it would unjustly enrich Auch if these payments, which Lurie supports with an affidavit, were ignored. Lurie argues therefore that an accounting is necessary. Lurie also contends that Auch's request for summary judgment regarding the Crown Bank loan proceeds is premature because Auch has not yet made any payments on his guaranty related to those loan proceeds.

Auch responds that Lurie's affidavit, submitted in response to Auch's motion, contradicts Lurie's earlier sworn deposition testimony. Auch asserts that Lurie testified in his deposition that the funds Lurie contributed to the partnership were Lurie's own capital contributions and therefore were not on behalf of Auch. Auch argues that Lurie's affidavit is an attempt to create a fact issue concerning the capital contributions by contradicting his own earlier sworn testimony and should be disregarded or stricken by

the Court. The Court therefore first addresses the consideration to be given Lurie's affidavit before turning to the substantive merits of Auch's conversion claim.

### A. Lurie's Affidavit

The Eighth Circuit Court of Appeals has addressed the issue of "sham affidavits," stating:

> Parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. . . . While district courts must exercise extreme care not to take genuine issues of fact away from juries, a party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.

*Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997) (citations omitted). "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006).

The undisputed facts establish that from 2006 through 2009, Lurie received from Auch capital contributions totaling $536,500 which were deposited into Lurie's personal account. When asked at his deposition about his own contributions during that same time, Lurie provided the following testimony:

> Q. So you were covering slightly more than half of the capital contributions and he [Auch] would cover slightly less?
>
> A. That's the way the percentages were broken down.

(Lurie Dep. at 48.)

> Q. Who decided how much money you would put in and how much money Wally would put in?
>
> A. Well, when Wally put in money, I was going to eventually hopefully be able to match my share.
>
> Q. And did you?
>
> A. I did.

(*Id.* at 78.)

Lurie also testified during his deposition regarding a handwritten spreadsheet, marked as Exhibit 22, entitled "Capital Contributions E&R Partners." Lurie stated that the purpose of Exhibit 22 was "to see the capital contributions between what Wally had put in and what I put in." (*Id.* at 183.) When asked at his deposition if the amounts he wrote on Exhibit 22 were calculated by listing all of the checks that were written to E&R Partners from either the Lurie & Associates account or Lurie's personal checking account, Lurie testified, "I think so." (*Id.* at 199.) In his affidavit, Lurie now testifies that checks written to E&R Partners from those same two accounts constitute transfers of "Mr. Auch's funds." (Lurie Aff. ¶ 4 & Exs. 1-33.)

Exhibit 22 also contains an entry for a "non cash" contribution by Lurie in the amount of $110,965. Lurie testified at his deposition that this entry represented the cancellation of a note receivable that was owed to him by E&R Partners. (Lurie Dep. at 79, 199, 227.) Lurie specifically testified that the cancellation of the note receivable was one of Lurie's capital contributions to the partnership. (*Id.*) Now, in his affidavit, Lurie testifies that the cancellation of the note receivable was done "[o]n behalf of Walter E. Auch." (Lurie Aff. ¶ 3.)

11

The Court finds that the affidavit submitted by Lurie in opposition to Auch's summary judgment motion constitutes a revision of testimony in an effort to create an issue of fact where none existed before. There are circumstances in the Court's experience where a party submits an affidavit to explain or clarify an unclear or ambiguous answer provided during an earlier deposition. This is not such a situation. The deposition testimony provided by Lurie was clear. The affidavit contradicts Lurie's earlier testimony and is therefore respectfully rejected by the Court.

B. **Auch's Capital Contributions**

Auch seeks summary judgment for the entire amount of his capital contributions, $536,500, asserting that the funds were converted as soon as Lurie deposited them into his personal checking account. Viewing the evidence in the light most favorable to Lurie, as the Court must at the summary judgment stage, the Court concludes that Auch is not entitled to summary judgment based solely on Lurie's act of depositing Auch's checks into Lurie's personal account. The undisputed facts show that each check was written to Lurie personally, rather than to E&R Partners, and that on multiple occasions Lurie wrote checks to E&R Partners on the same day that he deposited a check from Auch into Lurie's personal account. A jury could conclude, therefore, that some portion of Auch's capital contributions was transferred to E&R Partners without first being converted to Lurie's personal use.

Lurie's bank records also establish, however, that in each instance, following the deposit of funds from Auch and intended for the partnership, Lurie spent the majority of those funds on expenses unrelated to the partnership. The Court concludes therefore that

where Lurie's expenses in the days following deposit of Auch's funds exceeded the funds otherwise available to Lurie, Lurie improperly converted Auch's funds and Auch is entitled to summary judgment. The Court will address each deposit in turn.

Auch wrote a check to Lurie for $122,500 in late February 2006. In addition to Auch's funds, Lurie had approximately $40,943 available in the weeks that followed, including $35,000 transferred from an account in his wife's name,[2] yet Lurie spent $84,700 in transactions unrelated to E&R Partners. The Court concludes that Auch is entitled to partial summary judgment in the amount of $43,755 for Lurie's conversion of Auch's February 2006 capital contribution.

In March 2007, Auch wrote a check to Lurie for $26,000. In the weeks that followed, Lurie had approximately $6,533 available in addition to Auch's funds, but Lurie disbursed approximately $29,000 in transactions unrelated to E&R Partners. The Court concludes that Auch is entitled to partial summary judgment in the amount of $22,465 for conversion of Auch's March 2007 capital contribution.

Auch wrote a check to Lurie in the amount of $80,000 in August 2007. In the weeks that followed, with no funds other than Auch's capital contribution available, Lurie disbursed funds totaling approximately $69,390 in transactions unrelated to E&R

---

[2]   Auch asserts that Lurie had only $1,000 available from this $35,000 because Lurie wrote a check to E&R Partners for $34,000 on the same day. The Court finds, however, that a reasonable juror could conclude that the $34,000 check, which was written on the same day that Auch's check was deposited, was a partial transfer to E&R Partners of Auch's capital contribution. The entire $35,000 would then be available for Lurie's personal expenses.

Partners. The Court concludes that Auch is entitled to partial summary judgment in the amount of $69,390 for conversion of Auch's August 2007 capital contribution.

Auch wrote a check to Lurie for $80,000 in December 2007. Lurie had access to approximately $1,860 in addition to Auch's funds in the weeks that followed, during which Lurie disbursed funds totaling approximately $47,500 in transactions unrelated to E&R Partners. The Court concludes that Auch is entitled to partial summary judgment in the amount of $45,640 for conversion of Auch's December 2007 capital contribution.

In January 2009, Auch wrote Lurie two checks totaling $168,000. In the months that followed, Lurie had access to approximately $10,238 in addition to Auch's funds. During that time, Lurie spent approximately $160,907 in transactions unrelated to E&R Partners. The Court concludes that Auch is entitled to partial summary judgment in the amount of $150,665 for conversion of his January 2009 capital contribution.

Finally, Auch wrote a check to Lurie for $60,000 in July 2009. Lurie had access to approximately $12,389 in additional funds in the months that followed but disbursed approximately $69,745 in transactions unrelated to E&R Partners. The Court concludes that Auch is entitled to partial summary judgment in the amount of $57,355 for conversion of his July 2009 capital contribution.

In sum, the Court grants partial summary judgment to Auch in the amount of $389,270 for conversion of Auch's capital contributions. Auch asserts that he is also entitled to interest from the time of conversion. Auch requests pre-judgment interest at the rate of ten (10) percent, pursuant to Minn. Stat. § 549.09, and post-judgment interest, as calculated pursuant to 28 U.S.C. § 1961.

The Court agrees that Auch is entitled to pre-judgment interest. "Generally, the measure of damages in a conversion case is the market value of the property at the time of the conversion, plus interest from that time." *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417, 419 (Minn. Ct. App. 1990). The Court concludes, however, that Auch is not entitled to the ten (10) percent interest rate set forth in Minn. Stat. § 549.09. Section 549.09 applies where pre-judgment interest is not "otherwise provided by contract or allowed by law." Minn. Stat. § 549.09. Since Minnesota common law allows pre-judgment interest in the damages calculation for conversion, section 549.09 is not applicable. The Court therefore awards interest at the rate of six (6) percent, which is the rate of interest for legal indebtedness set forth in Minn. Stat. § 334.01, from the time of conversion until entry of judgment.[3] The Court also awards post-judgment pursuant to 28 U.S.C. § 1961, to begin accruing upon entry of judgment in this action.

### C.   Crown Bank Loan Proceeds

Auch asserts that he is entitled to summary judgment for Lurie's conversion of the proceeds from the Crown Bank loans guaranteed by Auch. Auch asserts that when Lurie removed those proceeds from the E&R Partners account and spent the funds for Lurie's own personal purposes, Lurie converted the proceeds.

---

[3]   In Auch's calculation of pre-judgment interest under the theory that Auch's funds were converted at the time Lurie used those funds for Lurie's own personal expenditures, Auch calculates interest from the date of the final act of conversion for each deposit of Auch's check, rather than from the date of each individual act of conversion. The Court therefore adopts the same dates in its pre-judgment interest calculation.

15

Lurie asserts that summary judgment on Auch's claim regarding the Crown Bank loan proceeds is premature because Auch has not yet made any payments pursuant to the related guaranty. Lurie also contends that Auch's allegations that the guaranty is invalid or unenforceable raise genuine issues of material fact that prevent summary judgment on this issue.

The Court concludes that Auch is not entitled to summary judgment on his conversion claim as that claim relates to the Crown Bank loan proceeds. A claim for conversion requires that the plaintiff have a property interest in the allegedly converted property. Here, Auch has not established that he personally, as opposed to E&R Partners, has a sufficient property interest in the loan proceeds to support a claim for conversion. The Court therefore denies Auch's motion for summary judgment as to the Crown Bank loan proceeds.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Auch's Motion for Partial Summary Judgment (Doc. No. [65]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Auch is entitled to judgment against Lurie in the amount of $389,270 for conversion of Auch's capital contributions;

    b. Auch is entitled to prejudgment interest at a rate of six (6) percent per year from the date of conversion until the entry of judgment, an amount equal to $66,068.95 as of the date of this Order; and

   c. Pursuant to 28 U.S.C. § 1961, post-judgment interest shall accrue beginning on the date of entry of judgment in this action.

Dated: May 10, 2011      s/Donovan W. Frank
               DONOVAN W. FRANK
               United States District Judge